U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 2 0 2011

CLERK, U.S. DISTRICT COURT
By _____
     Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TERRENCE M. FILER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-310-A |
| | § | |
| MICHAEL B. DONLEY, SECRETARY OF THE AIR FORCE, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court is the motion for summary judgment of defendant, Michael B. Donley, Secretary of the Air Force. After having considered such motion, its supporting brief and appendix, the response of plaintiff, Terrence M. Filer, and his supporting brief and appendix, defendant's reply, the summary judgment record as a whole, and pertinent legal authorities, the court has concluded that such motion should be granted, and that plaintiff's claims should be dismissed.

I.

The Nature of Plaintiff's Claims

Plaintiff was employed by defendant as an air reserve technician ("ART") in the 301st Maintenance Group at Naval Air Station Joint Reserve Base in Fort Worth, Texas, from June 2004 until March 2008. ARTs are full-time civilian employees of the Department of the Air Force whose positions require that they also serve in the Air Force Reserve unit in which they are

employed. At the time of the events giving rise to this action, plaintiff was Chief of Training Management in his civilian capacity. He was also a Staff Sergeant in the Reserve.

Plaintiff claims that during his employment in the 301st, defendant discriminated against him in violation of Title VII by subjecting him to a hostile work environment and disparate treatment because of his race, which is African-American. The things plaintiff contends contributed to his alleged hostile work environment were summarized in his complaint as follows:

> a. DEFENDANT permitted the public display of Nazi Swastika(s) in its workplace from September 13, 2005, to September 23, 2005, or beyond;
>
> b. DEFENDANT created a work environment and atmosphere in the 301st Fighter Wing and/or 301st Maintenance Group in which white employees were frequently afforded preferential treatment over non-white employees;
>
> c. DEFENDANT created a work environment and atmosphere in the 301st Fighter Wing and/or 301st Maintenance Group in which non-white employees do not receive promotions into management positions as frequently as their white counterparts; and/or,
>
> d. Supervisory employee and a Senior Non-Commissioned Officer in the employ of the DEFENDANT, Senior Master Sergeant Christopher Roark (hereinafter, "ROARK") publicly displayed a noose in his office, an office frequented by African-American employees, on and/or before September 21, 2007. (September 21, 2007, was the day after the so-called "Jena 6 marches" in Jena, Louisiana). The noose was seen by at least four, and possibly more, employees of DEFENDANT, including but not limited to three African-Americans and one Caucasian.

Compl. at 5, ¶ 19.

In March 2008 plaintiff applied for and accepted the position of Education and Training Technician in the 97th Readiness Squadron at Altus Air Force Base in Altus, Oklahoma, where he remains employed by defendant. Because such position is not an ART position, plaintiff lost his position in the Reserve upon accepting his new position.

II.

Defendant's Motion

Defendant moved for summary judgment on all of plaintiff's claims. In his brief in support of his motion, defendant asserts that:

1. plaintiff's claims are barred under the Feres[1] doctrine because plaintiff was on active duty on the date of the noose incident, and adjudicating plaintiff's claims would require the second-guessing of military personnel decisions;

2. plaintiff failed to exhaust administrative remedies as to certain allegations and his hostile work environment claim; and

3. plaintiff has failed to adduce summary judgment evidence creating genuine disputes as to the basic elements of either of his claims.

---

[1] Feres v. United States, 340 U.S. 135 (1950).

III.

## Plaintiff's Claims Are Not Barred Under *Feres*

Because defendant's contention that plaintiff's claims are barred under the Feres doctrine implicates the court's subject matter jurisdiction, the court will address that contention first, before addressing defendant's other arguments in support of the motion.

The Feres decision involved three cases in which military servicemen sought to hold the government liable under the Federal Tort Claims Act for injuries they sustained while on active duty. See Feres v. United States, 340 U.S. 135, 136-37 (1950). The Supreme Court held that the government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146. In a later opinion, the Court explained that its decision in Feres was driven by the extreme consequences that might result if servicemen could sue the government for negligent orders given by superiors or injuries sustained during the course of duty. See United States v. Brown, 348 U.S. 110, 112 (1954). Thus, Feres has been understood broadly to prohibit actions requiring judicial review of military decisions. See, e.g., United States v. Stanley, 483 U.S. 669, 683-84 (1987) (stating that no Bivens remedy was available for injuries occurring incident to military service); Crawford v. Tex. Army Nat'l Guard, 794 F.2d 1034, 1035-36 (5th Cir. 1986)

(applying Feres to bar § 1983 claims brought by Texas National Guardsman).

The Fifth Circuit has considered the applicability of Feres to Title VII claims brought by dual status technicians such as plaintiff on three occasions. See Williams v. Wynne, 533 F.3d 360, 365-68 (5th Cir. 2008); Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 294-301 (5th Cir. 2008); Brown v. United States, 227 F.3d 295, 299 (5th Cir. 2000). In each case the Fifth Circuit determined that the technician's claims were nonjusticiable. However, a brief discussion of those cases reveals that they are distinguishable from the instant action and that the concerns underlying the Feres doctrine are simply not present here.

    1.   Brown v. United States, 227 F.3d 295 (5th Cir. 2000).

In Brown, the plaintiff was an ART who was charged with misconduct and substandard performance and was honorably discharged. 227 F.3d at 297. He sued the government under Title VII, claiming that actions leading to his discharge and his discharge were discriminatory and retaliatory. Id. The district court dismissed the action on the ground that the plaintiff's claims were nonjusticiable. Id. It reached that conclusion after determining that, in order for the claim to proceed, it would be forced to analyze a military personnel decision, in violation of the "incident to service" test. Id.

The Fifth Circuit affirmed, but on different grounds than the district court. It said that plaintiff's claims were

5

governed by 42 U.S.C. § 2000e-16, the provision of Title VII precluding the military departments, including the Air Force, from engaging in employment discrimination. Id. at 298. The court noted that such provision waived the sovereign immunity of the military departments, but explained that such waiver has been understood to apply only to suits by civilian employees of the military departments, and not those by members of the armed services. Id. Addressing the problem of dual-status employees such as Brown, the court stated:

> As a consequence of the limited scope of the Title VII waiver, employment discrimination claims by ARTs must be categorized as either arising from their position as a civilian employee of a military department, or their position as a uniformed service member. . . . Claims arising purely from an ART's civilian position are provided for under Title VII; claims that originate from an ART's military status, however, are not cognizable . . . .

Id. at 299.

The Fifth Circuit concluded that Brown's claims originated from his military status and, therefore, were not cognizable, saying:

> Although Brown attempts to characterize his claim as arising from his civilian position, this is not the case. Brown seeks review of actions taken by the military that form the basis of his military discharge. While these actions had a civilian component, in that his discharge made him ineligible for his civilian position, they nonetheless were actions taken within the military sphere. Claims that involve this type of intrusion into military personnel decisions are not permissible, even under Title VII.

Id.

2. <u>Walch v. Adjutant Gen.'s Dep't of Tex.</u>, 533 F.3d 289 (5th Cir. 2008).

The plaintiff in <u>Walch</u> held a dual-status position in the Texas Air National Guard. 533 F.3d at 291. He was discharged from his military position for substandard performance, and, as a result, lost his civilian position because he could no longer meet the requirement of that position that he maintain membership in a state National Guard. <u>Id.</u> at 292. He sued the State of Texas, that state's military department, and the Secretary of the Air Force, under Title VII, <u>Bivens</u>, and 42 U.S.C. § 1983, claiming that he was discriminated and retaliated against during his employment and that his discharge was also retaliation. <u>Id.</u> at 292.

The Fifth Circuit defined the issue in <u>Walch</u> to be: "how the <u>Feres</u> rules apply to claims arising from the service of a member of a state's National Guard, and specifically, a dual-status federal technician." <u>Id.</u> at 296. After concluding that the concerns underlying the <u>Feres</u> doctrine were equally justified for the National Guard as the active military, the court discussed several relevant precedents, including <u>Brown</u>, <u>Mier v. Owens</u>, 57 F.3d 747 (9th Cir. 1995), and <u>Jentoft v. United States</u>, 450 F.3d 1342 (Fed. Cir. 2006). <u>Id.</u> at 297-301. While it declined to follow the holding of <u>Jentoft</u>, the <u>Walch</u> court noted that such decision included a useful list of claims dual-status employees could not bring, namely "those 'that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise

involve the military hierarchy.'" Id. at 300. The court summed up:

> Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management--demotions, determining performance level, reassignments to different jobs--because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kind of discrimination Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

Id. at 301.

Applying such observation to Walch's Title VII claims, the Fifth Circuit determined that each was nonjusticiable because it challenged a military personnel decision. Id.

3. Williams v. Wynne, 533 F.3d 360 (5th Cir. 2008).

Williams involved an ART who was discharged from his military and civil positions after he tested positive for cocaine during a drug test administered while he was on active duty. 533 F.3d at 364. The plaintiff appealed from his military discharge to the Air Force Board for the Correction of Military Records ("AFBCMR") and from his civilian discharge to the Merit Systems Protection Board ("MSPB"). Id. When the AFBCMR and MSPB affirmed his removal, he brought suit challenging the decisions of the AFBCMR and MSPB and further alleging that his removal from his civilian position violated Title VII. Id. Relying on Brown, the district court held that plaintiff's Title VII claim arose from his military service and dismissed for lack of subject matter jurisdiction. Id.

The Fifth Circuit affirmed, stating with respect to the plaintiff's Title VII claim, that:

> The district court committed no error in finding that the appellant's claim arose from his military status. . . . Regardless of whether the appellant ingested the drugs while on military status, he tested positive for cocaine use while on military status and the decision to discharge him as a result was therefore a military personnel management decision, which was integral to the military structure and which we will not second guess.

Id. at 368.

\*          \*          \*          \*

What distinguishes Brown, Walch, and Williams from the instant action is that the claims asserted in those cases challenged the lawfulness of the plaintiff's discharge from the military, whereas the claims asserted in this action are based on plaintiff's contention that he was subjected to a hostile work environment. Unlike in those cases, the court can safely adjudicate plaintiff's claims without having to review military personnel decisions. Therefore, plaintiff's claims do not arise from his military status and are not barred by Feres.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that

there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in response to a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted).

V.

## Analysis of Plaintiff's Discrimination Claims

A. Exhaustion of Administrative Remedies

In his brief in support of his motion, defendant contends that plaintiff failed to exhaust his administrative remedies as to all of his claims other than the noose incident because plaintiff did not contact an EEO counselor within forty-five days of the date on which those events occurred. The court assumes that what defendant means to say is that plaintiff cannot include conduct other than the noose incident--such as the swastika incident and the alleged preferential treatment of white employees--as part of his hostile work environment claim, because plaintiff did not exhaust administrative remedies as to that conduct.

Federal employees complaining of employment discrimination prohibited by Title VII must exhaust administrative remedies before seeking relief in federal court. Regulations promulgated by the Equal Employment Opportunity Commission describe the steps an employee must take to exhaust such remedies. First, the employee must initiate contact with an EEO counselor within forty-five days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). If a resolution cannot be reached through informal counseling, the employee must file a formal written complaint with the EEOC. Id. § 106(a)-(b). Once the employee receives notice that the EEOC has taken final action on the complaint, he has ninety days to initiate an action in federal

court. 42 U.S.C. § 2000e-16(c). An employee may not bring a civil action based on claims that were not asserted in the formal complaint, or that could not "reasonably be expected to grow out of [such complaint]." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).

Because a hostile work environment claim necessarily involves ongoing or repeated conduct, a plaintiff asserting such a claim need not exhaust administrative remedies as to each individual incident of harassment that contributes to the hostile environment. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-20 (2002). Rather, as long as one incident contributing to the alleged hostile environment occurred within the forty-five-day window prior to the plaintiff's initial contact with an EEO counselor, other incidents about which the plaintiff complains that are part of the same hostile work environment practice are deemed exhausted, even though they may have occurred outside the applicable time period. Id. at 120.

In this case, the record shows that plaintiff contacted an EEO counselor once, on September 27, 2007. The only incident of harassment about which he complains that occurred within forty-five days of his contact with the counselor was the noose incident. Thus, the court's task is to determine whether all of the other things plaintiff says contributed to his hostile work environment were "part of the same actionable hostile work environment practice" as the noose incident. Id. at 120. If so, those incidents are deemed exhausted and may be considered by the

12

court in determining the merits of plaintiff's hostile work environment claim. Id. at 117-120. If not, plaintiff has failed to exhaust administrative remedies as to those incidents, and they may not be considered as part of his hostile work environment claim. Id.

The court concludes that the things described in plaintiff's complaint other than the noose incident, such as preferential treatment given to white employees, and the swastika incident, are not part of the same actionable hostile work environment practice as the noose incident. The swastika incident occurred years before the noose incident and was not even known to plaintiff until after he commenced the EEO proceedings related to this case. Plaintiff's complaints regarding the promotion and discipline of minority employees, as compared to white employees, involved conduct that did not even affect him directly. Roark, who was responsible for the noose incident, apparently was not involved in any of the incidents plaintiff complains of other than the noose incident. In other words, all of the other incidents about which plaintiff complains bear absolutely no relationship to the noose incident. Because those incidents were not part of the same hostile work environment practice as the noose incident, plaintiff has failed to exhaust administrative remedies as to them, and the court may not consider them as part of his hostile work environment claim. The court will only consider the noose incident in reviewing plaintiff's hostile work environment claim.

B.  The Merits

   1.  Hostile Work Environment

To survive the motion for summary judgment with respect to his hostile work environment claim, plaintiff must point to evidence in the record from which a rational trier of fact could find that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew, or should have known, of the harassment and failed to take prompt remedial action. EEOC v. WC&M Enters., Inc., 496 F.3d 393, 399 (5th Cir. 2007).

Defendant contends that plaintiff has not met his summary judgment burden as to several of these elements; however, the court finds plaintiff's failure to meet his burden as to the fourth element dispositive. For harassment to affect a term, condition, or privilege of the victim's employment, it must be sufficiently severe or pervasive to create a work environment that is both subjectively and objectively abusive, i.e., one that the victim actually perceives as abusive and one that a reasonable person would find hostile or abusive. Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67

(1986)). While there is evidence that plaintiff subjectively perceived his work environment as hostile, the court concludes that, given the totality of the circumstances surrounding the noose incident, no rational trier of fact could find that it was so severe or pervasive to create an objectively hostile work environment.

The summary judgment record establishes the following with respect to the noose incident: On September 21, 2007, plaintiff was on his way to the snack bar when he stopped in Roark's office to chat with one of his coworkers, Denver McCullough ("McCullough"). Roark was not in the office at the time. Plaintiff and McCullough had been talking for "maybe a minute" before plaintiff noticed a hangman's noose hanging from Roark's desk. Def.'s Mot., App. at 120. The noose was tacked to the bottom of a stand holding a knick-knack grenade. The stand had the words "complaint department" on it, and a number "1" was attached to the grenade's pull pin. Id. at 53. Plaintiff asked McCullough what the noose was, and McCullough responded that he did not know. Plaintiff told McCullough to let Roark know that he would be coming back to talk to him about the meaning of the noose. Approximately an hour later, McCullough informed Roark that plaintiff had seen the noose and that Roark might want to get rid of it. Roark immediately threw the noose in the garbage.

Later that day, plaintiff went to talk to Roark to see "what the noose was about." Id. at 132. Roark told plaintiff that he found the noose in an aircraft shelter while deployed to Iraq and brought it back to include in his "complaint department." Roark also told plaintiff that he had thrown the noose in the garbage when he heard plaintiff was offended by it. When plaintiff left Roark's office, Roark held the impression that the incident had been resolved.

While the court is mindful that some groups view a noose as symbolic of hate, intimidation, and violence toward African-Americans, the court is satisfied based on the context in which this noose appeared that no rational jury could find that the noose created a work environment that a reasonable person would find abusive. Plaintiff viewed the noose only once, for a matter of a few minutes. The noose was not displayed in a location, or in such a manner, that was physically threatening to plaintiff or any other African-American employees. At least some of plaintiff's coworkers understood that it was part of Roark's joke "complaint department." Even assuming plaintiff did have reason to feel threatened by the noose initially, Roark's explanation of the noose's origin and purpose, and the fact that he disposed of the noose as soon as he heard plaintiff was offended by it, would have alleviated any such threat. Finally, other than conclusions

16

that are factually unsupported by probative summary judgment evidence, plaintiff has adduced nothing suggesting that seeing the noose interfered with his work performance.

For these reasons, plaintiff has failed to adduce evidence creating a genuine dispute over whether a reasonable person would find his work environment hostile or abusive, and summary judgment on his hostile work environment claim is therefore appropriate.

2. Disparate Treatment

In his complaint, plaintiff appears to assert, in addition to his hostile work environment claim, a claim for disparate treatment based on race. It is unclear if the factual basis for such a claim is different than the factual basis for plaintiff's hostile work environment claim. In any event, the court is satisfied that there is no summary judgment evidence in the record sufficient to create a genuine dispute of material fact as to a disparate treatment claim.

VI.

Order

For the reasons given above,

The court ORDERS that all claims asserted in the above-

captioned action by plaintiff against defendant be, and are hereby, dismissed.

SIGNED January 20, 2011.

_____
JOHN McBRYDE
United States District Judge